UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER MCSWAIN,

        Plaintiff,

  v.                                                             Case No. 08-C-157

BELINDA SCHRUBBE, et al.,

        Defendants.

**DECISION AND ORDER**

Christopher McSwain brought this § 1983 case against Belinda Schrubbe and Dr. Paul Sumnicht, alleging they were deliberately indifferent for failing to properly treat his foot condition while he was an inmate at Waupun Correctional Institution. After a number of extensions of time, the dispositive motions are now ready for decision. For the reasons given below, the Defendants' motion for summary judgment will be granted.

The complaint arises out of McSwain's claim that his foot was in pain, a chronic problem for him since he stepped on a nail while working as a roofer. He had been seen by specialists for foot problems and had surgery on the foot prior to entering prison. (Sumnicht Aff., ¶ 2.) His first visit with Dr. Sumnicht occurred on December 6, 2007. Sumnicht observed a wound on the bottom of McSwain's foot that did not appear to be healing, and he sought approval to have McSwain seen by a specialist. Sumnicht saw McSwain again on December 13, and the treatment he received during this visit underlies much of McSwain's civil rights complaint. Sumnicht's notes of that appointment follow:

> Inmate McSwain had a bulge in the arch of his foot that I thought was a puss pocket. I attempted to open it up to drain it out. When I first put in the drain, I observed an eclipse (like a football shape) about 10 x 5 cm of a thick black and brown calloused skin area. This discolored thick skin grows over tissue that does not have a good blood supply. It showed that the fat tissue in the arch of McSwain's foot did not have a good blood supply and was at risk to be infected and needed to be drained. Diabetics are known to be at risk for poor circulation to the skin of their feet and get foot ulcers. Because McSwain's skin sensation was so sensitive to touch and pain, I decided that his overall circulation was good to the other parts of the foot, and decreased to the arch under the thickened dark skin.

(Sumnicht Aff., ¶ 14.)

On January 17, 2008, McSwain had his appointment with a University of Wisconsin podiatrist, the specialist Dr. Sumnicht had requested. The podiatrist noted that there was no infection in the foot and recommended an orthopedic consult. In February McSwain had an MRI and was seen at an orthopedic clinic, and in March he had a bone scan and underwent surgery at the orthopedic clinic. He alleges that throughout much of this period he was in pain and his foot was becoming infected. His specific complaints against the Defendants are addressed below.

**I. Exhaustion of Remedies**

The Prison Litigation Reform Act ("PLRA") requires that inmates exhaust all remedies that the state makes available to them. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Kaba v. Stepp,* 458 F.3d 678, 684 (7th Cir. 2006) (citation omitted). Asking a federal court to become involved in the operations of a state prison is, after all, an extraordinary request.

It is clear that McSwain did not exhaust his administrative remedies with respect to Dr. Sumnicht. The only inmate complaint that is even plausibly relevant is one he filed on January 21,

2008, in which he complains of being in pain. (Gozinske Aff., Ex. B at 13.) (The Defendants suggest that McSwain was attempting to get narcotics prescribed.) That complaint was rejected (rather than dismissed) for failure to comply with Wis. Admin. Code 310.11(5)(c), which requires complaints to allege sufficient facts upon which redress may be made. It was, in other words, a procedural rejection rather than a determination on the merits. Wisconsin's prison grievance structure requires a certain level of specificity, and McSwain's complaint did not provide it. *Jones v. Frank,* 2008 WL 4190322, *3 (W.D. Wis. 2008) (noting that "[u]nder the general rule, plaintiff's failure to comply with this procedural requirement [§ 310.11(5)(c)] requires the court to dismiss his lawsuit for failure to exhaust all administrative remedies.") It appears McSwain did not appeal the dismissal, and that on its own would be sufficient to find a failure to exhaust.

Even if the inmate complaint had been considered, however, that complaint did not alert anyone at the state level to McSwain's allegation that Sumnicht's treatment of him was improper, much less unconstitutional. The complaint never allowed Sumnicht to attempt to remedy his treatment of McSwain. In the medical context, of course, speedy resolution of a problem is far more important than recovering damages years later; as such, legitimate inmate complaints should be designed to rectify matters by specifying exactly what the complaint against a given defendant is. Put another way, the state defendant should not be called to account for damages after the fact when a timely and specific complaint could easily have rectified matters much earlier. That would eviscerate § 1997e's exhaustion requirement. McSwain's vague filing did not accomplish these goals.

> Although Wisconsin's regulations do not require inmates to specify defendants by name in their complaints, the regulations do require inmates to provide enough information in their complaints to alert prison officials to the nature of the wrongs

3

for which they seek redress. . . . Plaintiff's complaint did not identify defendants Anderson or Dressler either by name or by reference to the acts of wrongdoing in which they were alleged to engaged. . . . Because complaint number SCI-2005-19608 did not put prison officials on notice of plaintiff's complaints against defendants Anderson or Dressler, plaintiff did not exhaust his administrative remedies.

*Ammons v. Gerlinger,* 2007 WL 5514719, *10 (W.D. Wis. 2007).

The same is true for claims against Nurse Schrubbe. McSwain's inmate complaint alleged very generally (the examiner called it "vague") that he was in pain and suggested that Schrubbe was a person who had information about his condition. But this complaint came right after his visit to a podiatrist and just before another visit with Dr. Sumnicht. He was given an MRI several days later, and throughout the two week period surrounding his complaint he saw the nurse repeatedly for foot care. He also saw Dr. Sumnicht on February 4. Given the constant medical care he was receiving, it was reasonable for the complaint examiner to reject his complaint as being too vague – what possible additional remedy could the examiner have awarded when McSwain was already receiving nearly constant medical attention?

McSwain protests that he filed numerous health service request slips, but these are not administrative complaints. The point of the exhaustion requirement is that the state needs to be informed that the inmate has a legal grievance against it – not just that he needs stitches or aspirin. McSwain also discusses the prison's failure to give his complaint an appropriate filing number, but that does not explain why he never filed a specific grievance about his medical treatment in the first place. Accordingly, I conclude that McSwain has failed to exhaust his claims that either of the Defendants violated his constitutional rights.

4

**II. Plaintiff's Failure to Respond to Defendants' Summary Judgment Motion**

A second procedural issue arises out of McSwain's failure to follow the rules governing summary judgment. McSwain makes most of his assertions in two tardy filings – a "reply" brief to the Defendants' motion, and another filing captioned as a "motion as to why his motion for summary judgment should be granted." As a general rule, reply briefs are not the place to make new arguments; nor are they substitutes for evidence.

Moreover, as the Defendants note, McSwain did not respond to their proposed findings of fact, which means those proposed findings are deemed admitted under Civil L. R. 56(e). That rule states that "[i]n deciding a motion for summary judgment, the Court must conclude that there is no genuine material issue as to any proposed finding of fact to which no response is set out." This rule echos the well-known requirements of Fed. R. Civ. P. 56. The fact that McSwain is *pro se* is of no moment. "We construe pro se filings liberally, but even pro se litigants must follow procedural rules of which they are aware, and district courts have discretion to enforce those rules against such litigants." *Hill v. Thalacker,* 210 Fed.Appx. 513, 515, 2006 WL 3147274, *2 (7th Cir. 2006) (finding that the district court acted within its discretion when it ignored inmate's proposed findings of fact and deemed defendant's facts admitted). McSwain was informed about these rules in the attachments to the Defendants' motion for summary judgment. Accordingly, he is deemed to have admitted crucial facts, including the Defendants' assertions that he received appropriate medical care. (DPFOF ¶¶ 11, 12, 36, 37.) This alone, like his failure to exhaust, dooms his claims.

**III. Deliberate Indifference**

For completeness, the Defendants also address the merits of McSwain's claims, and I will do the same. As noted earlier, the bulk of McSwain's complaint consists of a claim that Dr.

5

Sumnicht should not have "cut" his foot, because that seemed to make his pain worse. He alleges that Sumnicht was deliberately indifferent because "if he was not deliberately indifferent then where did those cuts come from on the bottom of my right foot[?] I told him not to cut open my foot but he went on and in his better judgment . . . caused a bad infection." (Dkt. # 102 at 3.)

First of all, Sumnicht does not deny "cutting" McSwain's foot. As noted above, he opened the foot to install a drain to reduce the potential for infection. (Sumnicht Aff., ¶ 14.) Second, there is little evidence in the record that McSwain's foot actually became infected as a result of Sumnicht. The notes from his appointment at the orthopedic clinic the next week suggest that there was no infection at all. (Schrubbe Aff., ¶ 12 (Notes from 1/18/08)). Third, even had McSwain's foot become infected, that does not establish deliberate indifference. It is well known that infections are a risk of any invasive medical procedure, and their occurrence does not, on its own, establish the doctor's negligence – much less deliberate indifference.

Finally, and fatally, it is apparent that the only basis for McSwain's claim is his own subjective belief that Dr. Sumnicht should not have "cut" him to drain the puss from his foot. An inmate's subjective belief that a different course of action would have been preferable does not constitute sufficient evidence of deliberate indifference to survive summary judgment. *Greeno v. Daley,* 414 F.3d 645, 653 (7th Cir. 2005). In fact, even a difference of opinion *between physicians* is not enough to establish deliberate indifference. *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006). Accordingly, even accepting all the facts in the light most favorable to McSwain, they only establish that McSwain was in pain and may have developed a foot infection. McSwain's own opinion about the proper course of medical care is not enough.

This is not to say that a *pro se* inmate will always lose if he lacks expert testimony. There are numerous situations in which the need for medical treatment is obvious even to a layman. For example, a prison guard who fails to assist an inmate who is bleeding uncontrollably may be found deliberately indifferent even without medical testimony. But in this case, where the disagreement is about whether a particular medical procedure (inserting a drain) was the best course of treatment, McSwain's own opinions are not enough to allow a jury to conclude that Dr. Sumnicht was deliberately indifferent. This is especially true when considering the difficulties, shown in the record, in treating infections in diabetic patients. If the record establishes anything, it is that McSwain's treatment was far too complex to allow the Plaintiff's lay opinion to constitute the entirety of the evidence of deliberate indifference.

The same is true for claims against Nurse Schrubbe. McSwain's claims are limited to an assertion that Schrubbe refused to allow him to see a doctor for an undetermined period of time and, on one occasion, told him that a co-pay would apply. He also asserts that Schrubbe stood by while Dr. Sumnicht was "cutting" him and told McSwain to stop being a baby.

The record belies any notion that Schrubbe was deliberately indifferent. Her own notes indicate that she saw him countless times (sometimes daily) for treatment of his foot – changing bandages, etc. (DPFOF ¶ 15.) The fact that she may have told him to quit being a baby on one occasion does not amount to cruel and unusual punishment. More importantly, McSwain's bare assertion that Schrubbe disregarded his complaints of pain ignores the glaring fact that he was under the care of Dr. Sumnicht and was repeatedly being sent off-site (no doubt at great expense) to foot specialists. Between January and April 2008, the relevant period here, McSwain was sent to

7

specialists eight times; and including December 2007, he saw Dr. Sumnicht some five times for his foot problem.

Although the existence of *some* medical treatment does not always negate a claim for deliberate indifference, when the treatment is targeted and under the supervision of physicians and specialists it will be all but impossible for an inmate to succeed in showing that the primary care nurse was somehow deliberately indifferent. Here, McSwain was seen almost daily for treatment of his wound. It is unclear what more Nurse Schrubbe should have done, especially given the medical supervision by Dr. Sumnicht and McSwain's other contacts with physicians. Even supposing McSwain had some evidence that Schrubbe "ignored" his complaints of pain, what was she supposed to do? She was not authorized to prescribe additional medication or perform other procedures. She could not overrule Dr. Sumnicht or any of the other physicians. And to the extent McSwain's claim alleges that Schrubbe delayed in allowing him to see the doctor in the first place, that assertion is undercut by McSwain's claim against Sumnicht: he alleges that Dr. Sumnicht is the one who "cut" him and made his condition worse, so it is difficult to see how Schrubbe's alleged delay could be blamed for his injury.

In all, McSwain was seen by medical professionals some 103 times between December 2007 and April 2008, not including the four times per day that he was seen for blood sugar monitoring (he is diabetic). (Schrubbe Aff., ¶ 14.) He was seen not just by prison medical staff but by several specialists, and he was seen not just for foot pain but for hypertension, diabetes, acid reflux, and a number of other ailments. He was prescribed a daily series of up to fourteen medications and insulin, all at taxpayer expense. (Dkt. # 57 at 6-7.) The record shows that he was counseled on obesity and diet (he weighed in excess of 330 pounds) but was largely noncompliant. Despite

8

receiving medical treatment better than that received by some heads of state and millions of citizens who never committed a felony, he justifies his action (and his demand for $750,000) on the basis of his own subjective belief that he understands proper medical care better than a registered nurse and two trained doctors (he also alleges deliberate indifference against the podiatrist, Dr. Migon). I have concluded that he has failed to exhaust these claims, and I have also concluded that his failure to comply with summary judgment procedure warrants dismissal as well. But even if the merits were all that were at issue, McSwain's evidence would not support a claim of negligence, much less deliberate indifference. Accordingly, the Defendants' motion for summary judgment is **GRANTED**. All other pending motions are **DENIED**, and the case is **DISMISSED**[1].

    **SO ORDERED** this   17th   day of March, 2009.

                                              s/ William C. Griesbach
                                              William C. Griesbach
                                              United States District Judge

---

[1] McSwain's motion for appointment of counsel is also denied. Having reviewed the merits of the action and the medical records, I conclude that justice would not have been served by the appointment of counsel. His motion to add defendant Dr. Migon (previously dismissed from this action) is also denied. His "evidence" against her consists of nothing other than his own opinion that she placed stitches inside his foot, when (in his view) he should have had some other procedure. The rest of McSwain's motions are summarily denied, as they are procedurally improper and / or redundant.